INHABITANTS OF MINOT vs. INHABITANTS OF BOWDOIN.

Androscoggin.　　Opinion May 24, 1883.

*Paupers. Marriage. Collusion of municipal officers. Settlement. Practice.*

When the settlement of the father of an illegitimate child is in one town and that of the mother in another town, and after the birth of the child their marriage was procured through the agency and collusion of the officers of the latter town for the purpose of changing the settlement of the mother, the settlement is not thereby affected, notwithstanding the first town received such mother and child. It can recover for necessary supplies furnished such mother after her removal, the pauper being in distress and needing relief and notice being duly given the town in which is her legal settlement.

It is correct to instruct the jury in an action for pauper supplies that if a municipal officer makes use of the fact of the father of a bastard child being under arrest by way of advice, argument, or persuasion, to induce the marriage for the purpose of changing the settlement of the pauper in such sense that but for such act of the officer the marriage would not have taken place, then the marriage was procured by the agency of the municipal officers to change the settlement.

An affidavit upon which is based a motion to set aside a verdict because of interest in a juror must negative all knowledge of such interest on the part of both counsel and party.

*Houlton* v. *Ludlow*, 73 Maine, 583, affirmed.

ON EXCEPTIONS AND MOTION.

Assumpsit for pauper supplies furnished the wife and child of Frank W. Hawkes.

The jury rendered a verdict for the plaintiffs for twenty-four dollars, and they found specially that six dollars of the verdict was for support of the child.

The opinion states the material facts.

*George C. and Charles E. Wing*, for the plaintiffs, cited: *McLellan* v. *Crofton*, 6 Maine, 307; *Jameson* v. *Androscoggin R. R. Co.* 52 Maine, 412; *Merrill* v. *Crossman*, 68 Maine, 412; *Winslow* v. *Kimball*, 25 Maine, 493.

*Gilbert and Atwood*, for the defendants.

The statute provides that overseers are to relieve persons destitute and *found* in their towns and having no settlement therein, and that they shall recover the expenses incurred of the town chargeable.  R. S., c. 24, § 24.

The town cannot go into a neighboring town and voluntarily take a pauper and bring her within its limits and then provide pauper supplies and make a third town in which is the settlement liable for the same.  The pauper cannot be said to be " found " in the town when she was actually found in a neighboring town.

Then again, great injustice might result from the adoption of such a rule.  Suppose a family of fourteen paupers in distress in York, whose actual settlement was in Kittery, should be removed by the overseers of Madawaska to that town and then they do, as these plaintiffs did after their removal, investigate the case and find that they did not own the paupers but that Kittery did, and suppose in the meantime the paupers have taken the small pox or other sickness, and expenses running into the thousands of dollars are incurred.  Must Kittery pay the bill and remove the paupers from the distant town at large expense? Can one town thus trifle with the rights of another town and subject it to burdens which, but for the mistaken action of the town in error, it would never have incurred?

Counsel further contended in an able argument that the instructions and rulings of the court as to what would constitute the procurement of a marriage by the agency of the municipal officers to change the settlement, were inappropriate to the case at bar, and did great injustice to the defendant town in that by means of them but one side was submitted to the jury.

APPLETON, C. J.  This is a suit to recover for supplies furnished Eunice Hawkes and her infant child.  While Eunice was residing in Webster, she became pregnant, and after the birth of her child she married Frank W. Hawkes, the father, whose settlement was then in the plaintiff town, while that of the mother was in the defendant town.  While Eunice was residing in Webster and receiving supplies there as a pauper, the overseers of the poor of Minot, being advised of the marriage, removed the pauper and her child to their town.  Subsequently and after

such removal, the paupers continuing and being in distress supplies were furnished them by the plaintiffs, due notice thereof given the defendants, and this suit was brought to recover compensation for the supplies thus furnished.

The question involved was whether the marriage of Eunice Hawkes was procured to change her settlement by the agency and collusion of the officers of Bowdoin, where her settlement was before such marriage. The jury by their verdict found that it was so procured.

The case comes before us on motions for a new trial and exceptions to the rulings of the presiding justice.

I. It is urged that the verdict should be set aside as against the weight of the evidence. We think otherwise. There was unquestionably evidence tending to establish the fact of a collusive marriage through the agency of the officers of Bowdoin for the purpose of changing the settlement of the pauper. The force and effect of the testimony was to be weighed and determined by the jury. Their conclusion is in accordance with the weight of the testimony rather than adverse thereto. No reason on this account exists for disturbing it.

II. The defendants insist that the verdict be set aside because a juror, who sat on the trial of this cause, had a brother who was then a resident and tax-payer in the plaintiff town.

The defendants had by virtue of R. S., c. 82, § 72, a right to examine any juror on oath to ascertain whether he was related to either party, had given or formed any opinion or was sensible of any bias, prejudice or particular interest in the cause.

This they neglected to do. They should have made the necessary inquiries to ascertain whether the jurors could impartially try the cause, before the trial commenced and delay their investigation till after the rendition of the verdict. The party thus remiss is not entitled to a new trial as matter of right, though it may be ordered as a matter of discretion. *McLellan* v. *Crofton*, 6 Greenl. 307 ; *Woodward* v. *Dean*, 113 Mass. 297 : *Tilton* v. *Kimball*, 52 Maine, 500.

Further, a party seeking a new trial by reason of interest in a juror should negative such knowledge on his part as well as

that of his counsel. *Jameson* v. *Androscoggin R. R. Co.* 52 Maine, 412 ; *Russell* v. *Quinn*, 114 Mass. 103 ; *Smith* v. *Earle*, 118 Mass. 531. Here the affidavit fails to negative knowledge on the part of counsel for the defendants. And the officers of the town might have been aware of the fact for aught that is very clearly disclosed in the affidavit of counsel.

It is not necessary to consider, whether, if the question were properly before us, a verdict should be set aside because one of the jurors was a cousin or brother to one of the inhabitants of a litigant town.

III. The presiding justice was requested to give this instruction : that, "if the jury believe from the evidence and under the instructions of the court, that the paupers, or either of them, had their lawful settlement in Bowdoin from the beginning and so remained, and that either or both of them was or were removed by the town of Minot, while she or they were or was in distress and in need of relief and so continued at and after such removal, and the town of Minot continually held them and provided for them, even then the plaintiffs cannot recover."

This request was general in its language. It was properly refused. The purport of the request is that if the officers of a town should remove a pauper in distress and being relieved in a town other than his settlement, the town so removing could not have a right of action for supplies duly furnished such pauper after his removal, against the town where the settlement of the pauper in fact was.

That the town so removing, the pauper having no settlement therein, could not sustain an action for expenses paid the town from which the pauper was removed, against the town in which the pauper had his settlement, is very clear. One town cannot make another liable by voluntarily assuming the payment of pauper supplies for which it was not liable, though such other town might have been and was bound to pay the town furnishing such supplies. One town cannot pay for supplies furnished a pauper by a town not liable for the support of such pauper and maintain an action for the same against the town which is liable. The jury were so instructed and properly.

IV. The paupers removed and being in distress and in need of relief after their removal, the overseers of the town of Minot were bound to furnish such relief as the exigency of their needs might require. It matters not how the paupers happened to be there; whether by mistake of fact or of law on the part of the overseers of the poor by whom their removal was effected. They might be illegally brought in a town contrary to the provisions of R. S., c. 24, § 38. But howsoever in the town and in distress, they are in the town, found in the town, and the law does not stop to inquire as to the mode or manner of their coming or by whom brought. It commands relief.

The paupers being in distress and relieved, the town relieving such distress has by the express terms of the statute, after following its requirements, to recover of the town in which the pauper relieved has his settlement, compensation for the supplies thus furnished. No question can be raised as to how or why the pauper happened to be in the town by which he is relieved. The conditions required for the maintenance of the action exist and plaintiffs must recover.

V. The presiding judge after alluding to the situation of Hawkes, who was arrested under the bastardy process, and to that of the mother of the illegitimate child, and of the motives and influences operating upon them and inducing marriage, added that so far as these were effective upon the minds of the parties without action by the defendant town, it would not be chargeable with the results arising from those causes. "But," he added, "if a municipal officer of the town made use of the facts of the situation, either by way of advice, argument, persuasion or inducement, made use of any means to induce the marriage for the purpose of changing the settlement, in such a sense that but for such act of the municipal officer, the marriage would not have taken place, if such a state of facts is shown, then the marriage was procured by agency of the municipal officer to change the settlement."

This instruction is in accordance with the statute, which provides that when a marriage is procured by the agency or the collusion of the town for the purpose of effecting a change in the settlement of a pauper, "the settlement is not affected by such marriage." It determines what is required to invalidate such marriage so far as relates to the settlement of a pauper, and by necessary and obvious implication negatives the idea that the mere honest giving of good advice would in any way affect such settlement.

VI. The child of Eunice Hawkes was born before her marriage and was illegitimate. But by R. S., c. 24, § 3, it is provided that "illegitimate children have the settlement of their mother at the time of their birth, but when the parents of such children born after March 24, 1864, intermarry, they are deemed legitimate and have the settlement of the father. The infant child therefore has the settlement of the father, which is in the plaintiff town. The amount of supplies for the infant was found by the jury to be six dollars, for which the defendants are not liable. *Houlton* v. *Ludlow*, 73 Maine, 583. This sum remitted, the verdict must stand.

Motions and exceptions overruled in case the plaintiffs will remit six dollars and interest thereon from the date of the verdict; otherwise exceptions are sustained and new trial granted.

*Judgment accordingly.*

WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.

BARROWS and SYMONDS, JJ., concurred in overruling the motion and exceptions, unconditionally.